Robert J. Hadge, a certified residential real estate appraiser, appeals from a judgment of the Superior Court affirming the amended final decision and order of the board of registration of real estate appraisers (board). We affirm.
1. Prior proceedings. In May, 2010, Prospect Mortgage, LLC, C2C Appraisal Service (Prospect Mortgage), lodged a complaint against Hadge with the division of professional licensure. Prospect Mortgage alleged that "multiple appraisals assigned to [Hadge] have been inspected by other people in [his] office ... and [he] was not present during the physical inspection." Hadge fully cooperated with the ensuing board investigation.
On July 25, 2011, an order to show cause issued.[2] Hadge, who was represented by counsel, entered into a stipulation agreement with the board; he conceded liability for certain violations and exercised his right to present mitigating evidence relevant to any sanction. On April 9, 2013, after taking administrative notice of "everything," including the stipulation agreement, an administrative hearing officer conducted a formal sanctions hearing. In her tentative decision, the hearing officer found the testimony of Hadge and his witnesses "credible and sincere," and left the choice of sanctions, if any, up to the board. See 801 Code Mass. Regs. § 1.01(11)(c) (1998). In its final decision and order, the board adopted the tentative decision without modification, and imposed a significant sanction.[3]
On review in the Superior Court, a judge concluded that he was unable to evaluate whether the sanction was arbitrary and capricious or an abuse of the board's discretion. See G. L. c. 30A, § 14(7), and c. 112, § 190(D ). Accordingly, he ordered the case remanded to the board for an explanation as to how it "came to its conclusion" and how the sanction fit within past precedents.[4] Following a remand hearing, the board, in its amended final decision and order, unanimously reaffirmed the sanction.
On cross-motions for judgment on the pleadings, a judge denied Hadge's motion, allowed the board's motion, and affirmed the board's amended final decision. This appeal followed. Over the board's objection, a judge extended the stay of the sanction pending the result of this appeal.
2. Substantial evidence. a. Stipulated facts. The board licensed Hadge to practice as a certified real estate appraiser in May, 1994.[5] On five occasions between November, 2009, and April, 2010, Prospect Mortgage placed orders for Hadge -- and only Hadge -- to perform appraisals of certain properties located in Sharon, Dedham, Walpole, Dover, and Medford.[6] In fact, the appraisals, including the physical inspections, were performed by Marilyn Ganame and Marie Limongelli.[7] Hadge's electronic signature certifying that he had performed the actual work was affixed to the reports. The appraisal reports did not disclose to Prospect Mortgage either that other individuals had affixed Hadge's electronic signature or the fact that Limongelli and Ganame had performed the appraisals. Hadge did not give written authorization to his staff specific to these assignments to affix his signature to the reports. Hadge agreed that, even though his staff performed the affixing, he was liable for the appraiser's certifications contained in the reports.[8] He also admitted that, by certifying in the reports that he had performed the appraisals, including physical inspections of the properties, he violated Uniform Standards of Professional Appraisal Practice (USPAP) ethics rules 1-1(b), 2-2(b)(vii), 2-2(b)(xi), 2-3 (2003) and G. L. c. 112, § 189(7). Finally, Hadge admitted that (1) his failure to maintain "sole and personal control" of his electronic signature, and (2) his failure to provide written authorization specific to these five assignments for another individual to affix his signature to the appraisal reports violated two of the board's regulations.[9] See 264 Code Mass. Regs. §§ 6.02(3)(a) & (f) (2016).
b. Mitigation evidence credited by the hearing officer. Both Hadge and Jonathan Asker, Hadge's "fact" expert, provided the historical context in which the mistakes occurred. Following the national mortgage crisis, the adoption of the Home Valuation Code of Conduct in May, 2009, fundamentally changed the appraisal business. Appraisers no longer received their assignments from their individual clients. Overnight, Hadge's work orders began to come from appraisal management companies, each with different demands and requirements.
Due to lowered interest rates at the time, the appraisal business steadily increased, while, at the same time, the supply of certified real estate appraisers apparently declined. In general, more compliance issues were raised and appraisals were subjected to greater scrutiny.[10] Appraisers received many more call backs from appraisal management companies seeking corrections of reports.[11] Asker testified that, although there was "really no excuse" for the inadvertent mistakes, he could understand how they happened during that timeframe.
Hadge explained that he believed his signature inadvertently ended up on the reports because of a computer or "software" glitch, and he offered a letter from the software vendor, explaining how the mistakes in the signatures likely were made. Hadge's business practice was to allow his support staff to make changes to the appraisal reports that did not involve "appraisal" issues. To make those changes, his support staff always logged in under Hadge's name and, as required by the software, "unsigned" the report. After making changes, his support staff member re-signed the reports. Hadge testified that two of the appraisal reports (one completed by Ganame, one by Limongelli) initially went out to Prospect Mortgage with the correct names on them. When the support staff attempted to add Hadge's name as the supervising appraiser to these reports, the actual appraiser's name was deleted by the software program and Hadge's name appeared as the sole appraiser.[12] With respect to the other three reports, Hadge assumed that his employees had realized that, after the reports were completed and signed, his errors and omissions policy needed to be added to them. After the changes were made, the program switched in Hadge's name as the appraiser because his support staff were logged-in under his name. The vendor subsequently updated the software to show the actual appraiser's log-in name on every single screen.
Soon after receiving notice of the complaint, Hadge implemented a procedure designed to prevent similar mistakes from happening in the future.[13] No further complaints have been lodged against Hadge.
3. Board's substantive decisions. At all times, Hadge has blamed his predicament on software "defects" and errors. The board did not accept this characterization. In its first decision, the board explained that the most troubling aspect of Hadge's conduct was the assignment of the work to other appraisers despite clear instructions from the client to the contrary. This impropriety occurred before any software "glitch." The board noted that, in each case, the appraiser responsible for the work did not appear on the certification. The board concluded that Hadge's violations were significant enough to justify the full revocation of his license. However, the board concluded that the matter was "unique" and factually distinguishable from past board cases. Accepting Hadge's mitigating evidence, the board instead elected to impose a suspension, finding that "this [wa]s less an issue of trying to mislead clients as it [wa]s a failure of [Hadge] to be in control of what occurred in his office." The board emphasized, however, that "the substantial errors should not be minimized."[14]
As directed by the Superior Court judge, on remand, the board provided further explanation of the reasoning that had led it to impose the eighteen-month suspension. First, the board again rejected Hadge's characterization of what had occurred, reiterating that "the matter went well beyond a software error." The board further explained what it meant by Hadge failing "to be in control." As the board viewed the matter, Hadge inappropriately delegated his appraisal responsibilities, allowing his unlicensed staff to make appraisal assignments, to make corrections to appraisals, and to affix signatures to completed appraisals. These facts, in the board's view, necessitated a significant sanction. Moreover, the board noted that this was not an isolated incident; Hadge violated the client's specific instructions on five occasions over the course of a six-month period. In the board's view, this was evidence of a systemic problem.[15] The board indicated that "the numerous misrepresentations occurring over an extended period of time, even if not intentional, were substantial and strike at the heart of being a licensed appraiser such as [Hadge]." Given the agreed-upon facts and Hadge's admitted violations of Massachusetts statutory and regulatory law, as well as professional standards, the board concluded that the sanction was reasonable.
4. Standard of review. Our review of the board's disciplinary decision is circumscribed by statute and case law. We may not set aside an agency decision unless we determine that the board's decision was unlawful. See G. L. c. 30A, § 14(7)(a )-(g ). Here, Hadge has the burden to establish the invalidity of the board's decision. See Gauthier v. Director of the Office of Medicaid, 80 Mass. App. Ct. 777, 783 (2011). In evaluating the sanction, we must give due regard to the board's "experience, technical competence, and specialized knowledge." G. L. c. 30A, § 11(5). Where different views of the evidence are open, we may not substitute what we would consider a more appropriate sanction for the board's choice. See Gauthier, supra at 783. We may only interfere with the board's exercise of its broad discretion on a showing of extraordinary circumstances. See Lawless v. Board of Registration in Pharmacy, 466 Mass. 1010, 1012 (2013).
5. Discussion. After careful review, we discern no violation of Hadge's due process rights or error of law by the board. Hadge, it was found, had no intent to deceive or to mislead anyone. The appraisals were performed accurately by licensed appraisers employed by Hadge.[16] However, in addition to admitting liability for electronic signature violations, Hadge also agreed that he was liable for the inaccurate appraiser's certifications in the five reports. Specifically, he stipulated that, by improperly certifying that he had performed the appraisals, including the physical inspections of the properties, he violated the industry ethics rule and standards, board regulations, and the statute that empowers the board to discipline certificate holders. See G. L. c. 112, § 189(7) ("failure ... to exercise reasonable diligence in developing an appraisal, preparing an appraisal report, or communicating an appraisal" is grounds for discipline). The hearing officer ruled that Hadge had notice of the charges against his license; and that, based upon all the findings of fact contained in the entire stipulation agreement, Hadge was subject to discipline for the statutory and regulatory violations.[17] There is no evidence that the hearing officer disregarded any part of the stipulation agreement. In fashioning an appropriate sanction, the board was entitled, consistent with due process mandates, to rely on these stipulated facts and stipulated violations.
The incorrect information conveyed to the client by Hadge's certifications raised serious public policy concerns for the board and was an important factor in its sanction decision. As the board noted, Hadge's digitally signed certifications told the client that (1) the appraiser was aware of his ethical obligations; (2) the appraisal reflected "the opinion, analyses, and conclusions" of the appraiser selected by the client (Hadge); and (3) no other appraisers had provided significant appraisal work. The board agreed that, as Hadge earlier stipulated, the inaccurate certifications violated USPAP rule 1-1(b) (prohibiting appraisers in course of developing real property appraisal from committing "a substantial error of omission or commission that significantly affects an appraisal").
On remand, the board relied upon the undisputed evidence and referenced Hadge's "actions and inactions," his failure to be in control of what went on in his office, his "blind" delegation, and the duration of the misconduct as the important grounds for the significant sanction. Read in context, the phrase "multiple misrepresentations" alluded to the many inaccurate facts passed on to the client by means of the certifications. Hadge agreed that he was liable for these certifications, which the board described in its expertise as "the core of the appraisal world." As Hadge admitted in the stipulation agreement, his acts violated Massachusetts statutory and regulatory law. We are satisfied that Hadge was not disciplined for new charges in violation of his due process rights. It also follows from what we have said that there is no merit to Hadge's other legal arguments regarding the sanctions based upon the "dismissed" charges.[18]
Hadge has failed to demonstrate any abuse of discretion in the board's choice of sanction. The board disciplined Hadge for much more than electronic signature errors. Hadge allowed his staff to make appraisal assignments, to correct appraisal reports, and to affix signatures. His staff missed the client's specific instructions limiting the assignments to Hadge, switched in Hadge's name as the appraiser as a result of a software "glitch," and failed to catch these errors before sending the final reports to the client. Hadge's delegation of his professional duties allowed these mistakes to happen. As a result, the board was warranted in finding that none of its prior disciplinary cases cited by Hadge were applicable or binding. In short, the facts of the case fall short of the extraordinary circumstances required to justify the reversal of the sanction.
The judgment of the Superior Court that affirmed the final amended decision of the board is affirmed.
Judgment affirmed.

Prosecuting counsel's motion to amend the order was subsequently allowed. The amended order to show cause added new allegations and causes of action.

The board suspended Hadge's license for eighteen months. In addition, the board conditioned reinstatement on (1) the completion of at least twenty-eight hours of continuing education and the taking of the national Uniform Standards of Professional Appraisal Practice (USPAP) course with examination; and (2) the payment of a civil penalty of $2,500. The board also mandated that Hadge serve a one-year probation period to commence upon the reinstatement of his license.

Pursuant to an agreement between Hadge and the board, the sanction was stayed pending the review.

That same year, Hadge incorporated his own business, R.J. Hadge Appraisals, Inc. At the time of the events that gave rise to the disciplinary action, Hadge, the company president, employed five other appraisers as well as three support staff.

The orders listed Hadge as the assigned appraiser and contained the following instruction from the client: "Appraisals must be completed by the assigned appraiser, appraisals cannot be reassigned to other appraisers in your office." Prior to these orders, Hadge and some of his approved appraisers had performed work for Prospect Mortgage. Hadge acknowledged his error in not enlightening his staff about Prospect Mortgage's requirement (or for not being more aware of it).

Hadge typically did not look at orders when they came in to the office. He delegated assignment duties to his office manager, Judy Lull, a nonappraiser. Lull assumed there was no restriction and, pursuant to office policy, assigned the work to the appraisers in the office most familiar with the subject territories. Ganame, a licensed appraiser, performed four of the appraisals. Limongelli, a certified residential real estate appraiser, performed one appraisal. The educational and work experience requirements for State certificates are more rigorous than those required for State licenses. See 264 Code Mass. Regs. §§ 5.03 & 5.04 (2016).

None of the certified appraisal reports were included in the record. Pursuant to the Uniform Standards of Professional Appraisal Practice (USPAP) ethics rule 2-3 (2003), each appraisal report must contain a signed certification similar in content to the following form:
"I certify that, to the best of my knowledge and belief:
"[T]he statements of fact contained in this report are true and correct.
"[T]he reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
"I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.
"I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
"[M]y engagement in this assignment was not contingent upon developing or reporting predetermined results.
"[M]y compensation for completing this assignment [is] not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
"[M]y analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
"I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)
"[N]o one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated." (Emphasis added).

The board regulations permit appraisers to authorize agents to affix their signatures to appraisal reports only if certain steps are taken. See 264 Code Mass. Regs. § 6.02(f) (2016). The authorized agent must be identified by name in the report; the report must state that the appraiser did not personally affix the signature, but rather authorized a specifically named person to do so; the appraiser must give written authorization specific to the particular assignment to the agent signing for the appraiser; and the written authorization is included in the work file and made available to the client. Hadge and his staff took none of these steps here.

Many large banks who loaned money to Asker's individual clients promulgated a new policy limiting appraisal work to certified appraisers (certification policy).

Judy Lull explained that, in that time, she fielded forty to fifty calls per day from clients requesting changes or addenda to appraisal reports. Based on these calls, she made minor changes to the appraisal reports.

At Hadge's request, the software vendor provided a letter explaining revisions to the signature areas on the reports. During the remand hearing, the board entered the letter as an exhibit. According to the vendor, once reports are unsigned, all information is deleted from the supervisor's section. The purpose of the design is to protect changes being made to reports without the knowledge of the supervisors. The vendor further explained that "[d]ue to the software program design, if the person who is re-signing the supervisor's signature to the report does not apply the signature correctly to the right side of the appraisal report, the supervisor's information is applied to the left side of the report and overwrites the appraiser's information." The vendor informed Hadge that others had experienced difficulties with signatures switched from supervisor to actual appraiser.

At an office meeting, Hadge instructed his staff to (1) make sure the appraiser assigned the work was acceptable to the client; (2) log in under the actual appraiser's name when affixing the electronic signature; (3) print out a hard copy of the appraisal report before sending it to the client; and (4) e-mail a copy of the report to the appraiser to verify that the correct signature appeared on the report.

Contrary to the board's analysis, there was evidence in the transcript that Prospect Mortgage was "made aware that other appraisers were doing the work" on two of the orders. Hadge gave conflicting testimony about whether he or his office received telephone calls about these two orders from Prospect. The hearing officer did not mention these aspects of Hadge's testimony in her decision. In any event, even if two reports initially were submitted to Prospect Mortgage with the correct appraiser names on them, the amended reports submitted to Prospect contained Hadge's certifications and omitted any reference to the work of Ganame and Limongelli.

Indeed, the testimony of Lull, Hadge's office manager, supported this finding. Lull testified that "everything was so busy and new back then [in 2009-2010]" that she was unaware that the software glitch was happening.

The fraud and misrepresentation charges included originally required a showing of intent that was not demonstrated on the agreed-upon facts. See, e.g., G. L. c. 112, § 189(5) ("an act or omission involving dishonesty, fraud, or misrepresentation with the intent to substantially benefit the certificate or license holder or another person or with the intent to substantially injure another person" is grounds for discipline). Pursuant to the stipulation agreement, those charges were dismissed. Nor were they revived by the board in subsequent proceedings and unfairly used to discipline Hadge.

These agreed-upon facts covered Prospect Mortgage's five work orders for Hadge -- and only Hadge -- to perform the appraisals, the physical inspections and appraisals performed by other appraisers in contravention of explicit orders, and the admitted violations of the USPAP ethics rule and five USPAP standards, and the statutory and regulatory violations. Pursuant to board regulation, all appraisers are required to follow USPAP standards of practice. See 264 Code Mass. Regs. § 11.01(1) (2016).

Moreover, the board did not engage in "rank speculation" about Hadge possibly violating the certification policy. The board expressly acknowledged that there was no evidence as to whether Prospect Mortgage had adopted the policy. As the board properly reasoned, the existence of such a policy "serve[d] to highlight the importance of adhering to client assignments and using adequate certifications."